J. S17045/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :    IN THE SUPERIOR COURT OF
                                       :          PENNSYLVANIA
              v.           :
                                        :
GARTOR BROWN,              :        No. 2538 EDA 2017
                                        :
            Appellant     :

Appeal from the Judgment of Sentence, July 5, 2017,
in the Court of Common Pleas of Chester County
Criminal Division at No. CP-15-CR-0001977-2016

BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JULY 25, 2019**

Gartor Brown appeals from the July 5, 2017 aggregate judgment of sentence of 11½ to 23 months' imprisonment imposed after a jury found him guilty of burglary, theft by unlawful taking or disposition, and criminal trespass.[1]  After careful review, we affirm the judgment of sentence.

The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows:  On April 5, 2016, appellant was charged with burglary and related offenses[2] in connection with a break-in that occurred in Pocopson Township, Chester County on August 10, 2015.  The owner of the

---

[1] 18 Pa.C.S.A. §§ 3502(a)(2), 3921(a), and 3503(a)(1)(i), respectively.

[2] Appellant was charged with burglary, theft by unlawful taking or disposition, criminal trespass, and receiving stolen property.  The charge of receiving stolen property, 18 Pa.C.S.A. § 3925(a), was withdrawn prior to trial.

burglarized residence, Kristen Giacchino-Doherty, indicated to police that her bedroom had been ransacked and two jewelry boxes, her passport, two designer bags, and several pieces of jewelry had been stolen. (Notes of testimony, 1/30/17 at 51-52, 54-66.) The majority of these items were later recovered in the home in Upper Darby, Pennsylvania, where appellant was residing at the time. (Notes of testimony, 1/31/17 at 28-31.)

Appellant proceeded to a jury trial on January 30, 2017. Following a two-day trial, the jury found appellant guilty of burglary, theft by unlawful taking or disposition, and criminal trespass. As noted, the trial court sentenced appellant to an aggregate term of 11½ to 23 months' imprisonment on July 5, 2017. Appellant did not file any post-sentence motions. This timely appeal followed on August 4, 2017. On August 10, 2017, the trial court ordered appellant to file a concise statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(b). Following an extension, appellant filed his Rule 1925(b) statement on October 27, 2017, and the trial court issued its Rule 1925(a) opinion on September 10, 2018.[3]

Appellant raises the following issues for our review:

> I.     Did the trial court err in admitting evidence that [a]ppellant had identification belonging to another person and a bus ticket in another person's name in his possession when arrested, as such evidence was improper bad acts evidence?

---

[3] The record reflects that on January 24, 2019, this court denied appellant's application for a third extension of time to file a brief as moot, as appellant filed a timely brief on January 23, 2019. (**Per curiam** order, 1/24/19.)

> II. Did the trial court err in admitting the expert testimony of Detective McGinnis over [a]ppellant's relevance objection?
>
> III. Did the trial court err in admitting the expert testimony of Detective McGinnis over [a]ppellant's objection that the unfair prejudice arising from Detective McGinnis's expert opinion was outweighed by its probative value?

Appellant's brief at 4.

All three of appellant's claims on appeal concern the admissibility of evidence. "[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Fransen***, 42 A.3d 1100, 1106 (Pa.Super. 2012) (citation omitted), ***appeal denied***, 76 A.3d 538 (Pa. 2013). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." ***Commonwealth v. Antidormi***, 84 A.3d 736, 745 (Pa.Super. 2014) (citation omitted), ***appeal denied***, 95 A.3d 275 (Pa. 2014).

Appellant first argues that the trial court abused its discretion in permitting the Commonwealth to introduce evidence that he possessed identification and a bus pass in another person's name on the date he was arrested trying to flee to Los Angeles, California. (Appellant's brief at 17.) Appellant avers that "this evidence was improper bad acts evidence and [its]

admission had a prejudicial value which unfairly outweighed its probative value." (*Id.*)

Prior to any discussion of the merits of appellant's claim, we must first determine whether the record is sufficiently complete to enable our review. Here, appellant contends that this issue was preserved during a pretrial hearing but acknowledges that said hearing was never transcribed. (**See** appellant's brief at 17.) We have stated "[w]hen the appellant . . . fails to conform to the requirements of [Pa.R.A.P.] 1911 [relating to transcript requests], any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa.Super. 2006) (citation omitted), **appeal denied**, 916 A.2d 632 (Pa. 2007). Furthermore, it is the appellant's responsibility to make certain that the certified record contains all items necessary to ensure that this court is able to review his claims. **See Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa.Super. 2008) (**en banc**). This court has stated:

> It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case. It is also well-settled in this jurisdiction that it is Appellant's responsibility to supply this Court with a complete record for purposes of review. A failure by appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined.

***Commonwealth v. Martz***, 926 A.2d 514, 524–525 (Pa.Super. 2007) (citations and internal quotation marks omitted), ***appeal denied***, 940 A.2d 363 (Pa. 2008).  Based on the foregoing, we find that appellant has waived his first issue.

Appellant's remaining claims challenge the admissibility of the testimony of Chester County Detective Lieutenant Mike McGinnis ("Detective McGinnis"), who testified as an expert in the field of cellular telephone data analysis[4] and evaluated appellant's cell phone usage on the date the victim's residence was burglarized.  (***See*** notes of testimony, 1/31/17 at 93-95, 102-115.)

Expert testimony is governed by Pennsylvania Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c)    the expert's methodology is generally accepted in the relevant field.

---

[4] Historical cell-site analysis has been defined as "the process of analyzing records maintained by cellular service companies to make a general geographic determination of what tower(s) and/or sector(s) a phone used to connect to a provider's network." ***Commonwealth v. Nevels***, 203 A.3d 229, 241 (Pa.Super. 2019).

Pa.R.E. 702(a)-(c).

"[T]he proponent of expert scientific evidence bears the burden of establishing all of the elements for its admission under [Rule] 702, which includes showing that the **Frye**[5] rule is satisfied." **Commonwealth v. Freeman**, 128 A.3d 1231, 1246 (Pa.Super. 2015) (citation omitted). The **Frye** rule, also known as the **Fyre** "general acceptance test," provides that "novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community." **Commonwealth v. Walker**, 92 A.3d 766, 789 (Pa. 2014) (citation and internal quotation marks omitted); **see also Freeman**, 128 A.3d at 1246.

Although not entirely clear from his "Statement of Question Involved," appellant's argument with regard to this matter appears to be three-fold.

## A. Expert's Specialized Knowledge under Rule 702(a)

The crux of appellant's first claim is that Detective McGinnis failed to render his expert opinion on the approximate range of the cell tower utilized by appellant's cell phone on the day of the burglary with a reasonable degree of certainty. Specifically, appellant contends that Detective McGinnis' expert testimony was "based on averages and assumptions rather than specific facts regarding the cell towers at issue," and "did not comply with the requirements set forth in [Rule 702(a)]." (Appellant's brief at 18, 24.) We disagree.

---

[5] **Frye v. United States**, 293 F. 1013 (D.C.Cir. 1923).

As noted, Rule 702(a) requires that "the expert's scientific, technical, or other specialized knowledge **is beyond that possessed by the average layperson**[.]" Pa.R.E. 702(a) (emphasis added). "While an expert need not use 'magic words,' the foundation of [his] opinion must still be sturdy . . . the expert must base the substance of [his] opinion on a reasonable degree of certainty instead of mere speculation." *Commonwealth v. Gonzalez*, 109 A.3d 711, 727 (Pa.Super. 2015) (citation omitted), *appeal denied*, 125 A.3d 1198 (Pa. 2015).

In the instant matter, our review of the record establishes that Detective McGinnis' testimony met the standard for admissibility set forth in Rule 702(a) and *Gonzalez*. At trial, Detective McGinnis testified as an expert in the field of cellular telephone data analysis, noting to a reasonable degree of professional certainty the approximate range of the cell tower utilized by appellant's cell phone on the day of the burglary, as well as the location of the cell phone within those coverage areas. (Notes of testimony, 1/31/17 at 94-95, 130.) Specifically, Detective McGinnis testified that the cell phone found on appellant's person at the time of his arrest utilized a cell tower located on Lenape Road in Pocopson Township, Chester County at 10:43 a.m., 10:47 a.m., and 10:48 a.m. on the morning of the burglary. (*Id.* at 102.) Detective McGinnis further noted that the victim's residence was approximately one-third of a mile away from this tower. (*Id.* at 107-108.) Detective McGinnis opined that the industry standard for such a tower is a

range of between one and one-half to two miles and that he was able to determine that the aforementioned calls were made on the western end of the county. (*Id.* at 113, 116 and 118.)

In reaching these conclusions, Detective McGinnis was questioned at great length with respect to maps he created during his data analysis, which reflected the operational range of cell phone towers near the victim's residence. (*Id.* at 99-119, 129-130.) Detective McGinnis noted that, "[g]enerally speaking, there is a radius for each of the towers. The analysis shows that when you make a call, we receive that tower location, that device is within that particular radius." (*Id.* at 113.) Detective McGinnis averred that he estimated the range of each tower in question based on the location of nearby towers and an expected amount of overlap in the coverage areas. (*Id.* at 141-142.) In determining the location of appellant's cell phone on the day, Detective McGinnis reviewed the tower location and coverage area utilized by appellant's cell phone. Detective McGinnis acknowledged that in estimating the coverage range of a tower, various factors are taken into consideration, including topography of the area, signal capacity, and weather. (*Id.* at 135-138, 143.) As noted, Detective McGinnis opined, within a reasonable degree of professional certainty, that based on the approximate range of the cell tower utilized by appellant's cell phone on the morning of the burglary, appellant's cell phone was in close proximity to the victim's residence. (*Id.* at 130.) Contrary to appellant's contention, we do not find

that Detective McGinnis' conclusions were of a nature that they would be "possessed by the average layperson[.]" **See** Pa.R.E. 702(a). Accordingly, the trial court did not abuse its discretion in permitting Detective McGinnis' expert testimony to be offered into evidence.

## B. Expert's Methodology under Rule 702(c) and *Fyre*

Appellant next posits that the Commonwealth did not sustain its burden of establishing that the methodology employed by Detective McGinnis was generally accepted in his field, pursuant to **Frye**. Specifically, appellant avers that:

> there was absolutely no evidence, as required by [Rule] 702(c)[,] that [Detective] McGinnis's methodology of eyeballing the towers and figuring the network isn't going to over-cover the area is generally accepted within the relevant field to determine the signal strength and range of a cell tower.

Appellant's brief at 24. We disagree.

As noted, Rule 702(c) incorporates the **Frye** standard. **Freeman**, 128 A.3d at 1246; **see also Grady v. Frito−Lay**, 839 A.2d 1038, 1042 (Pa. 2003) (noting that the **Frye** test "is part of Rule 702."). "However, the **Frye** analysis is not triggered every time science enters the courtroom; it only applies when an expert seeks to introduce novel scientific evidence." **Commonwealth v. Dengler**, 843 A.2d 1241, 1243 (Pa.Super. 2004), **affirmed**, 890 A.2d 372 (Pa. 2005). "As such, the trial court need only analyze this element of Rule 702 when **Frye** is implicated, that is, **when novel scientific evidence**

**is at issue**.” ***Commonwealth v. Powell***, 171 A.3d 294, 308 (Pa.Super. 2017) (emphasis added), ***appeal denied***, 183 A.3d 975 (Pa. 2018).

In ***Commonwealth v. Nevels***, 203 A.3d 229 (Pa.Super. 2019), a panel of this court recently recognized that scientific evidence concerning historical cell-site analysis was not novel, and thus its admissibility was not subject to requirements of the ***Frye*** general acceptance test. ***Id.*** at 239. The ***Nevels*** court stated:

> Upon review, we conclude that there exists no legitimate dispute regarding the reliability of historical cell-site analysis, and we therefore construe ***Frye*** narrowly so as not to impede [the] admissibility of the Commonwealth’s historical cell-site analysis evidence. Accordingly, we hold that **scientific evidence concerning historical cell-site analysis is not novel, and its admissibility is not subject to the requirements of *Frye*.**

***Id.*** at 241 (citation and internal quotation marks omitted; emphasis added).

Based on the foregoing, we conclude that Detective McGinnis’ testimony in this matter was not based on novel scientific evidence, and thus, the Commonwealth bore no burden of establishing that the methodology employed by Detective McGinnis satisfied the ***Frye*** “general acceptance” test. Accordingly, the trial court did not abuse its discretion in admitting Detective McGinnis’ expert testimony into evidence.

## C. Relevance and Probative Value versus Prejudicial Impact

In his final claim, appellant contends that the trial court abused its discretion by admitting Detective McGinnis' expert testimony on the range of the cell tower utilized by appellant's cell phone because it was irrelevant and that its prejudicial impact outweighed its probative value. (Appellant's brief at 18, 24-25, 27.) Specifically, appellant maintains that,

> [t]he danger of unfair prejudice to [a]ppellant far outweighed the probative value of this testimony considering that the range of the specific tower was not known. This was an industry standard, an average of the ranges of Chester County towers. The range and the signal strength of the specific towers could have been measured, but were not. There were scientific calculations and findings specific to this case that could have been made, but they were not. Allowing an expert opinion placing the cellular device in close proximity to the burglary based on the average of a Chester County cell tower was unfairly prejudicial and misleading.

*Id.* at 28. We disagree.

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Antidormi*, 84 A.3d at 750 (citation omitted); *see also* Pa.R.E. 401. Pursuant to Pennsylvania Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Pa.R.E. 403. The term "unfair prejudice" is defined as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id. Comment*.

> [I]n cases involving the admission of expert testimony . . . the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

*Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa.Super. 2013) (citation omitted), *appeal denied*, 80 A.3d 775 (2013).

Here, the trial court found that the probative value of Detective McGinnis' expert opinion on the cellular telephone data collected in this case outweighed its prejudicial impact. Specifically, the trial court reasoned that Detective McGinnis' expert testimony "aided the jury in their determination of the issues [and] . . . did not confuse or mislead them in any[] way." (Trial court opinion, 9/10/18 at 5.) Upon review, we discern no abuse of discretion on the part of the trial court in reaching this conclusion. Detective McGinnis' testimony that the cellular telephone data he analyzed demonstrated that appellant's cell phone was in close proximity to the victim's residence the morning of the burglary was both relevant and highly probative in establishing appellant's whereabouts, and was not overly prejudicial. Accordingly, we find that the trial court did not abuse its discretion in

overruling appellant's objection to Detective McGinnis' expert testimony on these grounds.

For all the foregoing reasons, we affirm the July 5, 2017 judgment of sentence.

Judgment of sentence affirmed.

Bender, P.J.E. joins this Memorandum.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/19